IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,735

In the Matter of WILLIAM E. COLVIN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 17, 2014. Published censure.

*Deborah L. Hughes*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *William E. Colvin*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, William E. Colvin, of Overland Park, an attorney admitted to the practice of law in Kansas in 1990.

On December 13, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on January 6, 2014. On February 19, 2014, and March 11, 2014, the parties entered into written stipulations of facts. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on March 11, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 3.1 (2013 Kan. Ct. R. Annot. 584) (meritorious claims and contentions); 3.3(a)(1) (2013 Kan. Ct. R. Annot. 594) (candor toward tribunal); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the

1

administration of justice); and 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"9.     In September, 1999, P.S. filed an action in divorce from her husband, J.S. Later that month, on September 30, 1999, P.S. and J.S. entered into a written separation agreement. The court granted the divorce and on December 23, 1999, the court entered a decree of divorce.

"10.     In the divorce decree, the court incorporated the terms of the separation agreement, which provided that J.S. was to pay P.S. $175,500 and one-half of J.S.'s 401(k) account as it existed at the time of the divorce. Neither the parties in the separation agreement nor the court in the divorce decree specified whether a qualified domestic relations order (hereinafter 'QDRO') would be prepared or when the payments were due. J.S. did not pay the $175,500 or one-half of the balance of the 401(k) account to P.S.

"11.     On August 31, 2001, David K. Martin, counsel for P.S. wrote to J.S. regarding the $175,500 payment and the division of the 401(k) account. In the letter, Mr. Martin stated:

'[P.S.] contacted me recently. Apparently numerous provisions of the Separation Agreement and court ordered Decree of Divorce have not been complied with. The most significant items are the $175,000 payment and division of the 401(K) account.

2

'I want to have a discussion of what steps are necessary to have the provisions of the court ordered Decree of Divorce satisfied. I need to speak with you or an attorney of your choice within the next 14 days to begin that discussion.

'If I do not hear from you or an attorney on your behalf within 14 days, I will recommend to [P.S.] that further action be taken in front of the court to enforce the provisions of the Decree of Divorce and Separation Agreement.'

J.S. did not respond to Mr. Martin's letter and no further action was taken by P.S. or on behalf of P.S. following the demand letter.

'12.    Thereafter, P.S. retained Jeffrey A. Kincaid to represent her in an attempt to collect the outstanding amounts from J.S. On December 18, 2003, Mr. Kincaid, sent J.S. a letter demanding payment of the $175,500, plus interest to date. The letter provided:

'This is to inform you that this law office represents [P.S.] concerning her claim against you for nonpayment of monies due pursuant to the Property Settlement Agreement, "Agreement", incorporated into the Decree of Divorce entered in 1999. This correspondence relates to a debt and any information derived shall be used for that purpose.

'According to the information given me, you have not tendered the sum of $175,500 set forth in the Agreement, section B. Division of Net Worth paragraph 1.d. As of this date, including interest, the sum due and owing is $234,924.78. I have not been advised of any basis for the nonpayment of this judgment.

'You have the right to dispute the claim of $234,924.78. In the event that you dispute all or part of this claim, you must contact this

office within thirty (30) days of the date of this letter. Further, should you demand verification of the claim, you must contact this office within thirty (30) days of the date of this letter. Your failure to do so will lead us to the conclusion that neither the claim nor the amount of the claim is in dispute. You must contact the undersigned within thirty (30) days of the date of this letter. The failure to do so will result in our pursuing this matter to the fullest extent allowed by law, including wage and property garnishment and execution upon nonexempt property.'

J.S. did not respond to the letter. Thereafter, P.S. took no further action nor was action taken on her behalf to collect the amounts owing at that time.

"13.    In July, 2009, P.S. retained the respondent to assist in collecting the amounts due from J.S. On September 9, 2009, the respondent wrote to J.S., demanding payment of the outstanding amounts. The letter provided:

'Please be advised that I have been retained by your former wife, [P.S.] regarding various issues relative to your divorce that remain unresolved. [P.S.] has asked me to attempt to contact you directly in an effort to negotiate a final resolution privately, without initiating further litigation. I hope you will accept this letter as a good faith effort to accomplish this objective.

'My records indicate that you and [P.S.] executed a *Separation Agreement*, effective November 20, 1999, that settled all ownership rights and interests relative to certain assets accumulated by you and [P.S.] as part of the dissolution of your marriage. A *Decree of Divorce* was entered by default in Johnson County District Court on December 23, 1999. The *Decree of Divorce* incorporated the *Separation Agreement*, which was adopted by the Court. Specific provision for the distribution of assets to [P.S.] were incorporated in the *Separation Agreement*. These provisions include the following:

4

1. *Page 4, Section B.1.d.*  The "Division of Net Worth" states that [P.S.] is entitled to payment of $175,000 [*sic*] from you. After nearly ten (10) years following the divorce, this amount has still not been paid.

    . . . .

3. *Page 5, Section B.1.f.*  This section states that [P.S.] is entitled to 1/2 of your 401(k) account effective as of the date of your divorce, plus any appreciation/gain on this asset, less any tax liability relative to any transfer. My records indicate that the beginning balance of your 401k [*sic*] account on January 1, 2000, was $80,151.25. To date, [P.S.] has not received her division of funds from this asset.

    . . . .

'I would welcome an opportunity to discuss your position relative to these matters. Please contact me within ten (10) days of the date of this letter if you would like to exercise this option. If I have not heard from you within such time, my client has authorized me to take any and all legal action within my perusal to enforce the provisions of the divorce decree.'

Again, J.S. did not respond to the respondent. Because J.S. did not respond to the respondent's demand letter, the respondent filed a breach of contract action, Johnson County District Court case number 09CV9367. Additionally, the respondent filed a motion in the divorce case to 'resolve the divorce decree'.

"14.    In the motion, the respondent argued that the decree was not final and was therefore unenforceable because the incorporated separation agreement did not include a due date for payment of the $175,500 payment or require the creation of a QDRO to divide the 401(k) account. The respondent argued that these omissions were 'clerical errors' that should be corrected under K.S.A. 60-260(a).The respondent requested, in the alternative, that the court conduct an evidentiary hearing and render a final adjudication of all unresolved issues relative to the property rights of the parties. The relief the respondent sought in the motion to resolve the divorce decree was based upon a previous ruling by the Kansas Court of Appeals in *In re Marriage of Haynes*, 115 P.3d 181, 2005 WL 1661517 (Kan. Ct. App. 2005) (unpublished opinion in Docket No. 92,807, filed July 15, 2005).

"15.    On October 23, 2009, J.S. sent P.S. an electronic mail message, offering her one-half of the existing balance of the 401(k) account. Under J.S.'s offer, P.S.'s share would have been approximately $32,000. It is unclear whether P.S. or the respondent responded to J.S.'s offer.

"16.    On January 8, 2010, through counsel, J.S. filed a response to the motion. In his response, J.S. argued that the separation agreement became a judgment when it was incorporated into the divorce decree and was, therefore, effective on December 23, 1999, the date the decree was entered. J.S. further argued that the judgment was extinguished and thus, the court lacked jurisdiction to hear the matter because P.S. failed to timely execute or timely revive the judgment.

"17.    On February 10, 2010, the district court denied the motion to resolve the decree of divorce, concluding that the judgment against J.S. for payment of $175,500 and one-half of the 401(k) account had become effective and due upon the filing of the decree and that the judgment had become dormant and had not been revived.

"18.    Based on the court's denial of P.S.'s motion, J.S. filed a motion to dismiss the breach of contract case, arguing that the court lacked jurisdiction over the breach of contract action on the theory of *res judicata*.

6

"19.    On March 30, 2010, the district court denied J.S.'s motion to dismiss. The court held a scheduling conference, granted P.S. leave to amend her petition on or before April 2, 2010, ordered discovery to be completed on or before September 24, 2010, ordered that all dispositive motions be filed by October 22, 2010, and set the final pretrial conference for December 13, 2010. Further, the court ordered that a pretrial order be prepared consistent with the local rule. Finally, the court ordered P.S. to provide a statement of her itemization of damages as part of her factual contentions.

"20.    On April 2, 2010, the respondent filed an amended petition in the breach of contract case.

"21.    On April 12, 2010, the respondent filed a motion to amend the journal entry in the divorce case. With the motion, the respondent provided an affidavit from P.S., which stated that she intended 'that payment would become due and owing upon my demand' and '[t]hat on September 9, 2009, [the respondent] mailed written demand for payment of these debts to [J.S.] at my direction.' Neither the affidavit nor the motion mentioned the two earlier letters P.S.'s attorneys had sent to J.S. in 2001 and 2003.

"22.    On May 14, 2010, P.S. submitted to a deposition. P.S. testified that her theory, as set out in the affidavit, was that the statute of limitations for the $175,500 and 401(k) debts did not begin to run until the respondent sent the September 9, 2009, demand letter and that the respondent's demand letter was the first time she had ever made demand for payment of those debts. When J.S.'s counsel showed P.S. the August 31, 2001, letter Mr. Martin sent to J.S., P.S. testified she had never seen the letter before.

"23.    On May 20, 2010, J.S. filed a motion for sanctions against P.S. and the respondent under K.S.A. 60-211. On July 14, 2010, J.S. filed a supplement to the motion that included the 2003 letter sent by Mr. Kincaid to J.S. demanding payment of the $175,500, plus interest.

"24.    In responding to the motion for sanctions, the respondent argued that the affidavit was not false, as it did not state that the September 9, 2009, demand letter was the first and only demand letter. The respondent also argued that because J.S. did not

7

agree that the debts were due on P.S.'s demand, the letters were not relevant to J.S.'s claims. Finally, the respondent raised a new argument—that the statute of limitations only began to run upon J.S.'s repudiation of the September 9, 2009, demand for payment.

"25.    On August 30, 2010, the respondent stipulated that the demand letters sent by Mr. Martin and Mr. Kincaid were genuine and authentic. The respondent however, did not stipulate that P.S. specifically directed each attorney to send each letter.

"26.    After two days of hearing, the district court granted J.S.'s motion for sanctions. Additionally, the court denied the respondent's motion to amend the journal entry. The court concluded that the respondent violated K.S.A. 60-211. Further, the court concluded that the failure to mention the two prior demand letters in the affidavit when mentioning the September 9, 2009, letter was misleading by omission, that omission was material because the purpose of the motion's due-on-demand theory was to set aside the March 30, 2009, order ruling that the debts were 'effective and due' on the date the divorce decree was filed; the respondent had failed to correct the omission as soon as he became aware of the prior letters demanding payment and instead 'maintained the position . . . that the demand for payment and performance was first made by [the respondent] in 2009,' and up to the date of the hearing and during the hearing, the respondent 'persisted in contesting and denying' whether the 2001 and 2003 letters were 'authorized' by P.S.

"27.    On November 4, 2010, the court ordered the respondent and P.S., jointly and severally, to pay J.S. $2,500 in attorney fees and expenses.

"28.    On November 24, 2010, P.S. appealed the district court's decisions on the motion to resolve the decree and the motion to amend. Both P.S. and the respondent appealed the sanctions order.

"29.    On December 8, 2010, the court dismissed the breach of contract case.

"30.    In approximately February, 2011, the respondent deposited $2,500 with the court as a supersedeas bond, pending appeal.

8

"31.    On May 4, 2012, the Kansas Court of Appeals affirmed the district court's denial of the motion to resolve the decree. Additionally, the Kansas Court of Appeals affirmed the district court's sanctions order. Finally, the Kansas Court of Appeals dismissed the appeal of the motion to amend the journal entry as moot.

"32.    In affirming the sanctions order, the Kansas Court of Appeals held that the respondent violated his duty of candor to the court when he failed to correct the omission of the prior demand letters in the motion and affidavit:

> 'Even if we were to entertain the notion that [P.S.] forgot having authorized the Martin and Kincaid demand letters and did not notify [the respondent] of their existence, [the respondent] at the very least became aware of the Martin letter during [P.S.]'s deposition on May 14, 2010, and the Kincaid letter on July 14, 2010, when Jeffrey included it with the supplemental motion for sanctions. [The respondent] had ample time to either withdraw or amend the motion before the district court conducted the September 1, 2010, hearing. In short, [the respondent] failed to take remedial measures to fulfill his responsibility to be candid towards the district court in advancing the merits of [P.S.]'s motion to amend journal entry so as to not undermine the integrity of the adjudicative process and cause unnecessary delay and expense.'

*Smith v. Smith*, No. 105,365, unpublished opinion filed May 4, 2012, at p. 13.

"33.    The Kansas Court of Appeals also found that the appeal was frivolous and awarded attorney fees in the amount of $10,000 against the respondent and P.S. under Supreme Court Rule 7.07(c) (2011 Kan. Ct. R. Annot. 64). *Smith*, at p. 14.

"34.    On May 4, 2012, the Kansas Court of Appeals forwarded a copy of the Court's unpublished decision to the Disciplinary Administrator. Based on the Kansas Court of Appeals' opinion, the disciplinary administrator docketed a complaint against the respondent.

9

"35.    On May 25, 2012, the respondent filed a written response to the complaint.

"36.    On July 30, 2012, the respondent paid the $10,000 sanction ordered by the Kansas Court of Appeals.

"*Conclusions of Law*

"37.    Based upon the findings of fact and the stipulations of the parties, the hearing panel concludes as a matter of law that the respondent violated KRPC 3.1, KRPC 3.3(a)(3), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g), as detailed below.

"KRPC 3.1

"38.    Lawyers must refrain from bringing frivolous proceedings. KRPC 3.1 provides:

'A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . .'

In this case, the respondent violated KRPC 3.1 by appealing the district court's denial of the motion to resolve the divorce decree and the motion to amend the journal entry. The Kansas Court of Appeals concluded that the appeal was frivolous and ordered the respondent to pay $10,000 in attorney fees. As such, the hearing panel concludes that the respondent violated KRPC 3.1.

"KRPC 3.3

"39.    KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the

10

lawyer.' In the pleadings, the respondent argued that the $175,500 and the proceeds from the 401(k) did not become owing until P.S. made the demand in 2009. The respondent, however, failed to inform the court that P.S. had previously made two demands for the money.

"40.    Assuming that the respondent did not initially know about the letters, he certainly knew about Mr. Martin's letter on May 14, 2010, and of Mr. Kincaid's letter on July 14, 2010. Yet, the respondent failed to correct the false statement by omission.

"41.    As the Kansas Court of Appeals stated, the respondent 'had ample time to either withdraw or amend the motion before the district court conducted the September 1, 2010, hearing. In short, [the respondent] failed to take remedial measures to fulfill his responsibility to be candid [to] the district court in advancing the merits of [P.S.]'s motion to amend journal entry so as to not undermine the integrity of the adjudicative process and cause unnecessary delay and expense.' *Smith*, at p. 13.

"42.    Accordingly, the hearing panel concludes that the respondent violated KRPC 3.3(a)(1) by failing to correct a false statement of material fact previously made to the court by the respondent.

"KRPC 8.4(c)

"43.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved misrepresentation when he failed to inform the court of the existence of the two previous demand letters. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"44.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he appealed the district

11

court's decision denying the motion to resolve the divorce decree, denying the motion to amend the journal entry, and the award of sanctions. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"KRPC 8.4(g)

"45.    'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on his fitness to practice law when he persisted with arguments which lacked merit. The hearing panel concludes that the respondent violated KRPC 8.4(g).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"46.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"47.    *Duty Violated*. The respondent violated his duty to the public to maintain his personal integrity.

"48.    *Mental State*. The respondent knowingly violated his duty.

"49.    *Injury*. As a result of the respondent's misconduct, the respondent caused injury to the administration of justice.

12

"Aggravating and Mitigating Factors

"50.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"51.     *A Pattern of Misconduct*. The respondent engaged in a pattern of misconduct when he persisted in making arguments which lacked merit. The respondent filed a breach of contract case, in addition to motions in the divorce action, which alleged the same frivolous arguments.

"52.     *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 3.1, KRPC 3.3(a)(1), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"53.     *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1990. At the time of the misconduct, the respondent has been practicing law for more than 20 years.

"54.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"55.     *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"56.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and the rule violations.

13

"57.     *Imposition of Other Penalties or Sanctions*. The respondent paid $12,500 in sanctions in this case. The district court ordered the respondent to pay $2,500 in sanctions. Additionally, the Kansas Court of Appeals ordered the respondent to pay $10,000 in sanctions. The respondent paid the sanctions. The respondent satisfied these orders in 2011 and 2012, respectively.

"58.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'6.12    Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

'6.13    Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

"*Recommendation*

"59.     During closing argument, the disciplinary administrator stated that it was difficult to determine whether the appropriate sanction in the case was censure or suspension. However, the disciplinary administrator recommended that the respondent be censured by the Kansas Supreme Court. The disciplinary administrator further argued that the censure should be published in the Kansas Reports. Additionally, the respondent also recommended that the Kansas Supreme Court censure him in a published opinion.

"60.    The hearing panel is mindful that the parties agreed that the respondent should be publicly disciplined by a published censure. Had the respondent not stipulated that he engaged in dishonest conduct, the hearing panel might have agreed to that recommendation. However, because the respondent characterizes his behavior as dishonest conduct, in violation of KRPC 3.3(a)(1) and KRPC 8.4(c), the hearing panel concludes that a short suspension is warranted. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 30 days.

"61.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

15

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 3.1 (2013 Kan. Ct. R. Annot. 584) (meritorious claims and contentions); 3.3(a)(1) (2013 Kan. Ct. R. Annot. 594) (candor toward tribunal); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator and the respondent recommended that the respondent be censured publicly. The hearing panel recommended that the respondent be suspended for a period of 30 days.

This court is not bound by the recommendations of the Disciplinary Administrator or the hearing panel. *In re Mintz*, 298 Kan. 897, 911-12, 317 P.3d 756 (2014). The court bases each disciplinary sanction on the specific facts and circumstances of the violations and aggravating and mitigating circumstances presented in the case. *Mintz*, 298 Kan. at 912. This court has taken the position that, while prior cases may have some bearing on the sanctions that the court elects to impose, those prior cases must give way to consideration of the unique circumstances that each individual case presents. *In re Busch*, 287 Kan. 80, 86-87, 194 P.3d 12 (2008). This court concerns itself less with the sanctions that were appropriate in other cases and more with which discipline is appropriate under the facts of the case before us. *In re Dennis*, 286 Kan. at 738.

While we understand the serious nature of the dishonest conduct that the respondent stipulated to, we agree with the Disciplinary Administrator's recommendation and find published censure to be appropriate in this case.

16

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that William E. Colvin be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] REPORTER'S NOTE:  Senior Judge Malone was appointed to hear case No. 111,735 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.